We now call appeal number 23-3151 Taylor v. Schwarzhuber. Okay, Mr. Thompson. Good morning. You know, Mr. Taylor, when he was stopped back in December 21, 2015, believed that he lived in a free society, and the law at that time established that he did, in fact. In 1968, our Supreme Court decided tarry and said, no right is held more sacred or is more carefully guarded by the common law than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law. This court, in United States v. Street, said about tarry, an investigative stop under tarry imposes a substantial intrusion on a person's liberty and dignity. Tarry's stops cannot be taken lightly. The law was clearly established well before this incident took place. The magistrate judge below erred in not granting Mr. Taylor summary judgment on this Fourth Amendment claim. Mr. Thompson, why didn't you move for summary judgment? The local rules do not require a specific motion for summary judgment. The local rules tee up under Rule 56. Parties put in facts. Both sides put in facts. And we made the argument that we were entitled to summary judgment in our summary judgment briefs. We did not file a separate motion, but we responded saying, under the facts, we were entitled to summary judgment. Mr. Thompson, do you see the distinction between a line and a response saying you should give a summary judgment in an actual prepared motion with a memorandum in support requesting summary judgment, with the reasons for the court and the law that you have identified as clearly established? We asserted everything in our response brief and our facts that we would have had in a motion. We argued on the merits, not only a summary judgment, but subsequently on the scope of the trial. I mean, we had, for all practical purposes, we thought there was an absolute agreement with the magistrate judge and the city that the only issue that was going to be tried was damages for the unlawful detention. But you didn't file a motion for judgment as a matter of law either, right? Well, that's the same thing. We didn't make a motion under Rule 50, right? Because we argued on the merits, both when we filed the motion on the scope and then in motions in limine. I mean, essentially three times we argued the exact issue, whether or not, under these facts. Well, the question is, has this argument been waived? That's really the heart of what we're talking about. I think absolutely not. We did everything we could to raise it. Except file a motion for summary judgment. No, no, no. We asked for summary judgment. You filed a response and alerted to 56F. That's right. You did not file a cross-motion for summary judgment. No. You did not file a motion for judgment as a matter of law under Rule 50. That's true. Okay. That's true. So has that not, has this argument been waived? I do not believe, under the facts and under the law, procedural law, that there was any waiver. We were before the magistrate judge on summary judgment and said, under these facts, Mr. Taylor is entitled to judgment. We argue, alternatively, that it was a jury question. That is legit. I mean, we cite the case. This court has said that we're able to do that. But there isn't a specific requirement that we file a separate motion under Rule 56 if we believe that the undisputed facts give Mr. Taylor the case. So I do not believe that this is waiver. Because we spent many, many, many, many, much time with the magistrate judge discussing that under these facts, Mr. Taylor was entitled to a judgment. And that the only thing the jury had to decide was damages. The essence of this case, and it was argued consistently throughout, is that officers cannot see a young, black juvenile running with a bag. We use this word a lot, juvenile, throughout the briefing, throughout the papers. And when we look at the legal definition of a juvenile, what would have characterized this black 16-year-old running in his neighborhood as a juvenile? I think, you know, common sense, having kids myself, when my kid was 16, he was a juvenile, he was a kid. I mean, does a kid running with a bag three days, four days before Christmas, taking a turkey to the neighbor, should that person be stopped for just running? There is law, isn't there, in our circuits, as well as other circuits, that talk about, you know, in a high, what they call a high crime area, if police officers see someone fleeing from them, that given, you know, given the circumstances, they may have reasonable suspicion sufficient to at least do an investigatory stop? I'm glad you asked. The only evidence of record, the two officers said that their supervisor had told them previously that there were some armed robberies in the neighborhood by juveniles. The day they went out, there were no calls for robberies, there was nothing specific, there was nothing specific that this is, so, in quotes, you know, a high crime area. All they had was a young person and some general claim that there was, that it was a dangerous neighborhood. The officers also, I just want to make sure I understand the record correctly, the officers also, from their perspective, said that they saw Mr. Taylor look at them, see them, and then speed up, right? And I take it that Mr. Taylor himself contests that version of the facts? The, I think one thing that the magistrate judge said at record 34, said the officers were not responding to any crime reported that day, they have not provided any facts about the past robberies in the area, the officers have not described anything suspicious about the object itself or how Taylor was carrying it, they simply didn't know if it was a bag or a backpack. The officers did observe Taylor run away from, did not observe Taylor run away from a store, a person, or a vehicle. They did not observe him cutting through private property, they did not observe Taylor check behind him as he ran, and Taylor was running fast because it was cold that day. Now, there is a dispute. Mr. Taylor said that he never sped up. The officers said that he sped up. I say that is not a material fact. Because if you're just running, he wasn't fleeing. The cases that the court alluded to is where there is someone fleeing from the officers. Well, but doesn't fleeing depend on whether or not the person that's running noticed that the officers were there? I mean, because as I recall the record, Mr. Taylor says that he was, first of all, he contested that he was sprinting, or he doesn't say he was sprinting, he said he was just jogging. And he also says that he never looked to see the officers. And in that situation, if you take his word for it, then I think that you may be right, that that doesn't amount to flight. But the officers say that they saw Mr. Taylor glance at them, and then when he glanced at them, they sped up. Now, I understand that there's a dispute of what happened. But given the fact that that dispute goes to whether or not a reasonable officer can consider, whether or not there was flight after seeing the officers, wouldn't that dispute be material to the determination of whether or not there would be qualified immunity here? No, I don't think so. The qualified immunity was clearly established, and there's no question in the court found below that there was no qualified immunity for once they knew that the turkey was in the bag, that there was no qualified immunity. But here's the important thing. These officers, Officer Rudzewski had made a determination on a young black man running, and he was going to run a warrants check. That decision was made before they ever got out of the car. They immediately asked Mr. Taylor, they frisked him, asked him if he was high, asked him whether he had a gun. Officer Shorter is looking in the bag and sees the turkey. What's the constitutional violation? I think there were three as a matter of law that they violated. And I think there's a jury question on the equal protection. There was no reasonable suspicion for the stop. Two, there was no basis for the pat down and frisk. And there was no basis for the continuing detention, putting him in the car and running a warrants check. Because the video itself establishes that the officers had discussions outside the car before they got in where Mr. Taylor was being held, that there was the turkey in the bag. So isn't there a factual dispute going back to Judge Lee's question as to whether or not there was reasonable suspicion to stop the young man as he's crossing the street? Under these facts, I think as a matter of law, a young black man running does not give rise to reasonable suspicion. It's not the running. If you listen to the question Judge Lee was asking, did the young man see the police and then speed up? In essence, did that turn into fleeing from police? Is there a factual question there? I would frame it this way. In the context of what the officers had already decided before they did anything, they had made a decision to stop and run a warrants check on him. They made that decision several times, even after they found the turkey. They called in. There were no records for this. The only thing we have, the CAD report, and it says black male suspicion. We know that call went in after they had already seen the turkey. And page 33 of the city's brief, they say that Officer Ridleyowitz knew on the sidewalk about the turkey. We know that there's no dispute at Shoresport. So the question is, when they know all they have is a turkey, and they know the kid has taken it to the neighbors, there's no legal basis to run a warrants check. None. Okay, Mr. Thompson, you're into your rebuttal time. Thank you. Ms. Williams? Okay. Good morning. Good morning. You may proceed. May it please the court, counsel. This is a challenging case to respond to in large part because a number of the issues raised by Mr. Taylor here today were not preserved for appeal. And thankfully, the trial court record supports the decisions made. I don't know if it does, because you don't include a single citation in your facts section. And you don't include any assertions that, you include quite a few that don't appear or accurately characterize the record. I just question, what do we do with your facts section? Well, I think that the city's factual background section in pages 2 and 3 of our response brief doesn't include those citations that are required. Even if you strike that section from the brief, which is suggested by, let's see, Gross versus Thomas Cicero, there is sufficient citation to the factual record in the argument sections when we reference facts to support the city's position here today. So if I can... The first one that I have is, it says in your brief, they were assigned to patrol the area because of ongoing armed robbery offenses by juveniles that were occurring at a high rate on Capitol Drive due to the holiday season. But the evidence at trial doesn't support that. If we look at docket 64, which is the sentencing transcript, it actually says, there had been some robberies and armed robberies by juveniles in the general area. Is that correct? In the general squad patrol area that they were assigned, that's correct. All right. And so I don't see anything in the record that supports the characterization that there were ongoing robberies. That day, Mr. Taylor is right. There were no active, fresh calls. All right. I don't see any support in the record that there were robberies occurring at a high rate. This is outside the record. Is that correct? That is not in the record. All right. And I don't see anything in the record that says that this was due to the holiday season. There is some discussion in Officer Radetsky's testimony that I took about the captain's car assignment to patrol specifically for armed robberies that had increased during the lead up to the Christmas holiday on December 25th. You say that in your brief that the Taylor looked at the officers and increased his speed. We spent a lot of time, you heard, talking about that just a moment ago. But at the trial, no one testified that Taylor sped up, ran faster, or increased his speed. That's correct. All right. So, the next question is, the officer testified that when he said stop, that the young man stopped immediately. Is that correct? Accurate. So, if there's no, in the record, there's nothing to support the government's allegation that he looked at the officers and increased his speed, are we able to rely on that? I want to go back to Terry versus... I want to go back to what you've presented to the court as the facts. And so, can we rely on the representation that the government has made to the court this morning that Taylor looked at the officers and increased his speed if there's nothing from the record that supports it? If that were the only fact, then yes. All right. So, my next question, it says that Taylor was holding a large bag, a large bagged object, but I don't see any support in the record that either the bag or the turkey that it contained was large. I see that what everybody agrees is that he was running with a bag that had a turkey in it. I think the reasonable inference is that turkeys are large. Frozen turkeys that we prepare at Thanksgiving and Christmas are usually the large ones, and so the reasonable inference supports that assertion. The last one that's concerning, it says that Taylor's manner was suspicious, and that's what piqued the officers' attention. I don't see anything in the record that says that anyone testified about Taylor's pre-stop disposition. It is in the record in Officer Wojcicki's testimony, and that is in document 71-1, pages 103 through 107. And what does he say? He says, and this is why that eye contact and increase in speed alone does not carry or lose the case. But it doesn't appear. It didn't occur below. Go ahead. So the officers testified at trial, Officer Wojcicki specifically, that when they first observed Mr. Taylor, he was running and crossed Capitol Drive, which is a major thoroughfare in Milwaukee, at a time when there was no traffic. This caused them to notice, and they testified at trial in agreement with Mr. Thompson that running alone is not a crime. But they watched him as he ran across the street, and what they thought was, is he running from something? Why is he running? It's clear to us that he's not exercising or jogging at the time. What is it about his manner? That's what you represented in your brief, that the suspicion was piqued by Taylor's manner. And if it wasn't him running, what is it about his manner? It was the flight path and the direction he was running at a time of night when there was nothing to indicate why or what he was running from. So if he was running south versus north, that would have been un- I'm trying to follow the argument. The argument is, as they first observed Mr. Taylor, they noticed him because he's running in an area, not clearly exercising, and not running away from something in question. How do you know this young man is not exercising, running down the street in his neighborhood? Well, I have to get there. So as they watch him, and what they conceded at trial was, they had no basis at that moment to stop him. And what happens is, as they watch him, consistent with their assignment to do this robbery, targeted kind of patrol, is they watch him, and as he runs across, he runs in front of their squad and they almost hit him. So that, on page 107 of document 71 in the trial court record, that sudden movement into traffic confirmed that their suspicions, in conjunction with the observation as they're watching him, that he's carrying something in his hands. So that was their- that was the trial testimony from Officer Rajewski explaining their reasonable suspicion. So what made him suspicious is that there's a young man running at night with an object in his hand. That is not the extent of- if that were the extent of it, this would be a problem. I'm still listening for something else then, other than what you've just described to me, is that he passes police officers, and he continues running with an object in his hand. In the context of the description that the officers had from their supervisors, which directed the mission they had that night. Stopped juveniles if you see them running with objects in their hand. That robbery victims were reporting that robberies were occurring conducted by juveniles who happened to be African American. And this was also explained in the trial court record by the officers. Is that not a blanket then to stop every African American young man running? Absolutely not. Absolutely not. And now that in hindsight- Because what we have that the officers had was that from the testimony from the trial, because that's what we have is the record, is that Taylor was perfectly cooperative. That Taylor was polite. And that he eventually began crying when he was placed in the back of a squad car. Accurate. And so, you represented that he was put in the back of a squad car due to the cold temperature. That's nowhere in the record. Instead, I have the officers sworn deposition testimony that said they placed him in the back of a car for a few minutes to see if there were any new fresh robberies reported. Where do we get a basis that he was placed in the squad car due to the cold temperature? I remember that this was testified to during the two days of trial. That's why some citations in a factual section would be useful over and above the fact that it's required. There's a larger problem. Judge Brewer asked you a series of facts and the facts are not in the record. I think only one of them you were able to respond, that it was in the record somewhere and hadn't been cited to. But it's an overall credibility problem with the city's brief. I think this goes back to what I was saying in the beginning. With the equal protection claim that was dismissed at summary judgment, and also the application of qualified immunity, a lot of the issues that could be ripe for appeal now are along those lines. And the problem with the city's brief is apparent, our failure to cite to the record. But that doesn't resolve the issue that the city was deprived of making any contrary arguments when, as Mr. Thompson says, he moved for entry of judgment as a matter of law multiple times through a motion eliminating. I think that from our questions, it's probably apparent that what we're really focused on is the initial stop. And what I'm troubled by is the qualified immunity summary judgment granted to the city with regard to that initial stop. As you know, a court on summary judgment when it comes to qualified immunity can't resolve disputes of fact. If there are disputes of facts that underlie qualified immunity defense, that has to go to the jury, and then afterwards the court can decide that question. What is your best factual argument based upon undisputed facts that would support the qualified immunity given to the officers for that initial stop? I think it goes down to the second prong of qualified immunity, the clearly established. And what I would like to note is that Terry v. Ohio gives us a standard that officers, in order to conduct a field interview stop and even a pat down, are required to have reasonable suspicion. As you might imagine, we're very familiar with Terry. There's also cases in this circuit where just because you're in what's called a high crime area, it doesn't mean that you can prophylactically stop everyone, right? There has to be some additional indicia. For example, flight, which is why we're focusing on flight. But there seems to be a dispute of fact as to whether or not Mr. Taylor's running opposite the direction of the police car was due to flight or not. And so I guess that's why I'm asking you, based upon kind of the undisputed facts, what is the city's best case that this would qualify? I want to direct the court's attention to United States v. Weathers, which is a Seventh Circuit decision, actually it's a district court decision, excuse me, where the facts are somewhat similar. There is a man who is walking down the street and he's kind of like looking in places, he's maybe acting according to the officer's observations from their perspective, which has their training and experience bias built in. They're there for a targeted armed robbery patrol because people had been reporting that they were victims of armed robbery having exited bars while they were intoxicated. A great scenario for a robber and a victim. What's interesting about U.S. v. Weathers is that the very end of the decision, the court points out that the calls for service, the brief interaction where the victim was able to provide a general description of who was robbing them, were specifically for suspects who are white or Hispanic. Mr. Weathers did not fit that description. As general and vague, unfortunately, for victims of armed robbery that can provide, Mr. Weathers was African American. So he didn't even fit that vague general profile provided by victims of those crimes. But that might time this up unless the court has other questions. Thank you. Mr. Thompson, let's see, we'll give you two minutes. Thank you very much. What troubles me the most about this case is the, we did not file a Monell claim. We referenced that the ACLU had filed a Collins case and that set up this whole issue of what kind of records are the police going to keep in Milwaukee. What's troubling is, you know, then Chief Judge Clavert had looked at the Dantzler case and he had summarized with the case out of 2006 where there was just no reasonable suspicion and the law was clearly established. When I've looked at these facts over and over again, at the end of the day, I only have a black male as a reason for the stop, period. Because the call comes in and says black male suspicious. And what we've learned through trial. You did not move for summary judgment in your favor on the Fourth Amendment claim. I. So for your equal protection claim, what's your best evidence of discriminatory effect? On the issue, the Rule 59, we asserted after the trial, again, revisiting the case, that it's manifest error not to find a violation of the Fourth Amendment as a matter of law. On the equal protection, the best case is that at the end of the day, when they put Mr. Taylor in the car, they knew they had no suspicious activity, period. I don't think there was any reasonable suspicion ever for the stop to begin with. But when they put him in the car, they were going to run the warrant check and they had decided that already. And the court made the notation. They put him in the back. They were hoping that calls would come in. Now that would tell me that this was pretextual to begin with. And now they're looking for a way to justify the stop. But all we have is a black male being held and a warrants check on him hoping something comes in. That is, I think, prima facie to go to the jury. Because at the end of the day, there is no reasonable suspicion. There is no suspicion other than a black young man running. Thank you. Thank you, Mr. Thompson. We'll take the case under advisement.